**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PINELLAS SUNCOAST TRANSIT
AUTHORITY,

       Plaintiff,

vs.                                                                    CASE NO. 8:06-cv-2042-T-17-EAJ

MINCOM, INC.,

       Defendant.

_____ /

**<u>ORDER ON MOTION TO DISMISS</u>**

This cause is before the Court on Defendant's, Mincom, Inc.'s ("Mincom"),

Motion to Dismiss Plaintiff's Amended Complaint, filed on June 25, 2007 (Dkt. 23), and

Plaintiff's Memorandum in opposition thereto, filed on July 11, 2007 (Dkt. 2).  For the

reasons set forth, Defendant Mincom's Motion to Dismiss, (Dkt. 23), is **DENIED** as to

Counts III, IV, and V.  The following facts from the Amended Complaint are accepted as

true for the purpose of resolving this motion.

**<u>BACKGROUND</u>**

On or about April 21, 2003, Plaintiff, Pinellas Suncoast Transit Authority

("PSTA"), issued a request for proposals from qualified firms to provide an "Integrated

Financial, Administrative, Transportation, and Maintenance Information System."  (Dkt.

21).  Defendant Mincom responded to PSTA's request and provided its proposal for a

solution to PSTA's integrated information system requirements.  After a series of

negotiations, Mincom and PSTA entered into a Master Customer Agreement (the

1

"Contract") on or about March 31, 2004.  Plaintiff claims that PSTA received a letter from Mincom's President, Rick Rogers, stating that Mincom's solution represented a "low-risk, total solution to PSTA's requirements" and that PSTA would benefit by "eliminating data redundancies and errors via Ellipse's fully integrated functionality." PSTA also alleges that Mincom represented that it had extensive experience in the transit industry, that it understood transit, that its consultants understood PSTA's requirements, that it had extensive experience in implementing their software in the transit industry, that its proposed solution would support the business functions enumerated by PSTA, that it was familiar with industry requirements, and that its software would meet industry requirements.  PSTA's original complaint, (Dkt. 7), did not specifically identify when, and by whom, these representations were made.  However, PSTA's amended complaint, (Dkt. 21), specifically states that some of these representations were made in a letter from Mincom's President, Rick Rogers, dated June 16, 2003, which is ten (10) months prior to the execution of the Contract.  (Plaintiff's Exh. "F").

PSTA's Amended Complaint also makes several allegations relating to Mincom's actions and omissions after the parties entered into the Contract.  Specifically, PSTA alleges that the software was incapable of generating certain reports as required, and that Mincom was unable or unwilling to remedy the problems in a timely fashion.  As a result, PSTA alleges that it was unable to achieve accurate payment to employees, that it experienced great difficulty in its year-end W-2 reporting requirements, and that it was forced to spend excessive amounts of time and expense trying to perform the routine functions that the software was supposed to have performed.

PSTA's Amended Complaint includes claims for (I) Breach of Contract, (II)

Breach of Express Warrantee, (III) Violation of the Florida Deceptive and Unfair Trade

Practices Act, (IV) Fraudulent Inducement, and (V) Negligent Misrepresentation.  On

April 14, 2007, this Court had issued an Order, (Dkt. 14), in regards to Defendant's

original Motion to Dismiss which GRANTED with prejudice as to a previous claim for

Breach of Implied Warranty, DENIED as to the claim for Breach of Express Warranty,

and GRANTED without prejudice as to the claims for Fraudulent Inducement and

Negligent Misrepresentation.  This Court now considers Defendant's Motion to Dismiss

Counts III, IV, and V of Plaintiff's Amended Complaint for failure to state a claim upon

which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

In deciding a motion to dismiss, a court can examine only the four corners of the

complaint. *Rickman v. Precisionaire,* Inc., 902 F. Supp. 232 (M.D. Fla. 1995).  Under

Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed for failure to state a claim

unless it appears beyond a doubt that the plaintiff can prove no set of facts that would

entitle him to relief. *Am Ass's of People with Disabilities v. Smith*, 227 F. Supp. 2d 1276,

1280 (M.D. Fla. 2002) (citing *Cook & Nichol, Inc. v. Plimsoll Club*, 451 F.2d 505, 506

(5th cir. 1971)).  When a federal court reviews a complaint's sufficiency, the issue is not

whether the plaintiff will ultimately emerge victorious, but whether the claimant is

entitled to offer evidence to support the claims. *Swierkiewicz v. Sorena N.A.*, 534 U.S

506, 512 (2002).  The threshold of sufficiency that a complaint must meet to survive a

motion to dismiss is exceedingly low. *Ancata v. Prison Health Services, Inc.*, 769 F.2d

700, 703 (11th Cir. 1985).  The trial court is required to view the complaint in the light

3

most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 104 S. Ct. 2229, 81 L.

Ed. 2d 59, 104 (1974), *Howry v. Nisus, Inc.*, 910 F. Supp. 576 (M.D. Fla 1995).

However, when, on the basis of a dispositive issue of law, no construction of the factual

allegations of a complaint will support the cause of action, dismissal of the complaint is

appropriate. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir. 1991), cert.

denied, 502 U.S. 810, 112 S. Ct. 55, 116 L. Ed. 2d 32 (1991); *Powell v. United States*,

945 F.2d 374 (11th Cir. 1991).


## FRAUDULENT INDUCEMENT AND NEGLIGENT MISREPRESENTATION

Mincom seeks to dismiss Count IV and Count V of PSTA's Amended Complaint

pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be

granted.  (Dkt. 23).  Mincom had previously asserted that PSTA failed to meet the

requirements of Fed. R. Civ. P. (9)(b) because it did not plead its claims for fraudulent

inducement and negligent misrepresentation claims with reasonable particularity.

Mincom now seeks dismissal of the misrepresentation claims because (1) several of the

alleged representations have no corresponding allegation that the representation later

proved to be false; (2) some of the statements can be classified as mere "puffing" rather

than actionable fraud; (3) the economic loss rule precludes recovery with respect to the

representations related to the performance of the contract as well as those representations

that were later incorporated in the contract documents; and (4) any oral representations

that were later adequately covered in and/or contradicted by the contract documents

cannot provide a basis for relief in the representation claims.

Under Florida law the plaintiff must prove certain essential elements for a claim of fraud in the inducement.  These elements are as follows:  (1) a false statement of a material fact; (2) known by the defendant to be false; (3) made to induce the plaintiff to act in reliance; (4) the plaintiff acts n reliance upon the representations; and (5) that proximately caused his injury.  *Butterworth v. Quick & Reilly*, 998 F. Supp. 1404, 1410 (D. Fla. 1998).  "The elements for negligent misrepresentation are those for a fraud claim, except that it does not require the element of knowledge to establish scienter."  *Id.* At 1411 (D Fla. 1998).  This Court previously dismissed the fraudulent inducement and negligent misrepresentation claims on the basis that PSTA's original Complaint failed to meet the particularity requirement of Fed. R. Civ. P. (9)(b) by omitting the time, place, and identity of the speaker related to these claims.  In its Amended Complaint, PSTA has now included Exhibit "F" showing a letter dated June 16, 2003, ten (10) months prior to the execution of the Contract, where Mincom's President, Rick Rogers, made the following  representations:

a) Mincom's proposal "represents a low-risk, total solution to PSTA's requirements."
b) PSTA would benefit "by eliminating data redundancies and errors via Ellipse's fully integrated functionality."
c) All of PSTA's "integration requirements can be supported through existing Mincom adapters."
d) Mincom would be a single source provider of the solution ("one business partner, one product").

In its previous Order, this Court noted that since this case involves claims for breach of contract as well as claims for fraudulent inducement and negligent misrepresentation, the timing of the alleged statements are central to the issue of whether the tort claims are sufficiently separated from the contract claims so as not to be barred by the economic loss rule.  With the particularity requirement of Fed. R. Civ. P. (9)(b)

5

having been met by the submission of Exhibit "F" in the Amended Complaint, this Court must now determine whether PSTA has failed to state a claim upon which relief may be granted.

First, Mincom argues that several of the alleged representations have no corresponding allegation that the representation later proved to be false.  Mincom has extracted ten (10) alleged representations that were asserted in the Amended Complaint, of which Mincom claims there is no corresponding allegation that the representation later proved to be false. (Dkt. 23).  Mincom's motion to dismiss fails to acknowledge that representations #1 - #7 were all general allegations that were pled by PSTA as factual allegations, all of which were incorporated into the specific Counts IV and V for fraudulent inducement and negligent misrepresentation.  The allegations of Count IV clearly states that "Mincom knew or should have known that the misrepresentations herein were false."  (Dkt. 27, ¶ 80).  As such, every representation contained in the general allegations of the Complaint, and those in the fraudulent inducement count, as listed by Mincom in their motion to dismiss, were alleged to be false by PSTA in paragraph 80 of the amended complaint.  Additionally, as worded, representations #6 - #9 all state that Mincom's representations were false by including both the representation and the factual allegations contradicting the representation in the same averment.

Second, Mincom asserts that *some* of the statements can be classified as mere "puffing" rather than actionable fraud.  This Court finds the use of the word "some" disturbing when referring to statements as being mere puffing or actionable fraud.  It would seem to logically follow that if "some" statements were merely puffing, then "some" would constitute actionable fraud.  Nevertheless, whether particular statements

would constitute mere puffing as opposed to misrepresentations of material fact, resulting in actionable fraud, would be reserved as a determination to be made by a trier of fact. This is the case for both Counts IV and V, and extends to the issue of "puffing" as it relates to allegations of both oral and written statements in the inducement.

Third, Mincom argues that the economic loss rule precludes recovery with respect to the representations related to the performance of the Contract as well as those representations that were later incorporated in the Contract documents.  When this Court ruled on Mincom's initial motion to dismiss, it was primarily concerned with the fact that the original complaint, on its face, did not identify the timing of Mincom's alleged misrepresentations.  Now that the timing of at least the statements in the letter by Mincom's President has been established as having occurred approximately ten (10) months prior to the execution of the Contract, this Court may now determine whether the statements or misrepresentations were made in an effort to induce PSTA into the contract, or whether such claims would more accurately be pled as breach of contract claims.

To state a claim for relief in tort where parties are in privity of contract, a plaintiff must set forth allegations of intentional or negligent acts independent of any claim for breach of contract.  *See Indemnity Insurance Company of North America v. American Aviation, Inc.*, 891 So.2d 532 (Fla. 2004).  A plaintiff generally cannot assert a tort cause of action for economic losses arising from a contract.  *Business Radio, Inc. v. Relm Wireless Corp.*, 373 F. Supp. 2d 1317, 1322 (D. Fla. 2005).  The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action.  *McIntosh Land Co. Ltd. P'ship v.*

7

*Fairfield Fletcher Ltd. P'ship*, 2005 U.S. Dist. LEXIS 24164 (D. Fla. 2005).  Fraudulent

inducement is an independent tort in that it requires proof of facts separate and distinct

from the breach of contract.  *Id.*

  Mincom argues that the allegations relating to Counts IV and V are so entwined

with the performance of the Contract, that the economic loss rule precludes these claims

in addition to the breach of contract claim.  Mincom cites *Hotels of Key Largo, Inc. v.*

*RHI Hotels, Inc.*, 891 So.2d 74 (Fla. 3d DCA 1997), among others, to show that PSTA's

claims for fraudulent inducement and negligent misrepresentation are barred by the

economic loss rule.  However, that court distinguished fraud in the inducement from

fraud in the performance by noting that the economic loss rule does not wholly usurp a

party's ability to bring an independent tort claim for fraud in the inducement where "the

ability of one party to negotiate fair terms is undermined by the other's fraudulent

behavior."  *Id.* at 77.  Mincom assumes that any representations made prior to the

execution of the Contract were a part of mere negotiations, of which were ultimately

incorporated within the Contract, and by that rationale, any claims in relation to those

representations are to be limited to a breach of contract claim only.  This Court agrees

that even-handed negotiations which are reduced to a writing, and are incorporated

therein, are not independent of a breach of contract claim and are limited to recovery

under a breach of contract claim.  However, a breach of contract claim regarding the fair

negotiation of terms and obligations leading up to the final execution of a writing is much

different than a circumstance where the negotiation process itself is undermined by

alleged fraudulent behavior.  The alleged fraudulent and negligent misrepresentations,

and the facts surrounding them, are specific to the ***inducement*** of the Contract, not in the

resulting *performance* of the Contract itself.  PSTA has pled allegations of fraudulent

and negligent misrepresentations made by Mincom prior to executing the Contract, and

that such representations were made solely for the purpose of *inducing* PSTA to enter the

Contract.

Finally, Mincom argues that any oral representations that were later adequately

covered in and/or contradicted by the contract documents cannot provide a basis for relief

in the representation claims.  Mincom specifically argues that it provided a disclaimer

regarding the resumes and qualifications of potential employees that would implement

the service.  The provision states, "Although we have included sample resumes in

Section 4.3, to protect the integrity of PSTA's project and other concurrent

implementations, Mincom is not prepared to designate specific personnel at this state in

the procurement process…"  (Dkt. 6, Exh. B, at Sec. 2.3).  PSTA's complaint is not that

Mincom did not send the same employees whose resumes were included, but that the

employees who were sent should have had a certain level of experience and

understanding of the transit industry.  PSTA's claims for misrepresentation pertain to its

detrimental reliance on Mincom's assertions that it, and its employees, were qualified to

implement the industry specific and platform specific project.

Accordingly, Mincom's Motion to Dismiss Count IV and Count V of PSTA's

Complaint is **DENIED**.

### FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

Mincom seeks to dismiss Count III of PSTA's claim under Florida's Deceptive

and Unfair Trade Practices Act ("FDUTPA").  Mincom argues that the FDUTPA claim

should be dismissed because it fails to satisfy the minimal pleading requirements set forth

in Fed. R. Civ. P. 8 and a recent U.S. Supreme Court decision, *Bell Atlantic Corp. v. Twombly*, 550 U.S. __ (2007).  Mincom acknowledges that it did not, in its first Motion to Dismiss, move to dismiss the FDUTPA claim raised in PSTA's original complaint. Fed. R. Civ. P. 12(g) normally does not allow a defendant to raise, in a subsequent motion to dismiss, defenses it could have asserted in a previous motion if those defenses were available at the time of the previous motion.  The rule does have exceptions to the waiver provision allowing a defendant to raise a Rule 12(b)(6) defense in any pleading under Rule 7(a), by motion for judgment on the pleadings, or at trial on the merits. Fed. R. Civ. P. 12(h)(2).  Contrary to Mincom's assertion, this exception does not contemplate allowing a defendant to raise a defense of failure to state a claim in any subsequent response.  *See Manns v. City of Atlanta*, 2006 WL 2466836, 3 (N.D. Ga. 2006) ("Rule 12(h)(2) only allows a failure to state a claim defense to be made in one of three (3) categories: a Rule 7(a) pleading; a motion for judgment on the pleadings provided by Rule 12(c); or at trial on the merits." *See also, Ludaway v. City of Jacksonville, Florida*, 2006 WL 1627012 (M.D. Fla. 2006).

Mincom argues that the *Twombly* decision has raised the bar on pleading requirements and that PSTA has failed to meet the pleading requirements of Fed. R. Civ. P. 8.  Specifically, that PSTA has failed to state an unfair *and* deceptive practice or act under the FDUTPA.  PSTA argues that to sufficiently plead a cause of action for a violation of FDUTPA, PSTA must only show that Mincom's actions were either deceptive *or* unfair.  Deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th

10

Cir. 2007).  The Florida Second District of Appeals defines an unfair practice as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2007).  In light of the facts available, and this Court's determination regarding Mincom's Motion to Dismiss Counts IV and V, PSTA has alleged sufficient facts to meet the threshold to survive a Motion to Dismiss.

Therefore, Mincom's Motion to Dismiss Count III of PSTA's Complaint is **DENIED**.  Accordingly, it is

**ORDERED** that Defendant Mincom's Motion to Dismiss, (Dkt. 23), be **DENIED** as to Counts III, IV, and V.

**DONE AND ORDERED** in Chambers in Tampa, Florida, this 31st day of July 2007.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:  All parties and counsel of record